UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 15-23376-CIV-MORENO

ARNALDO MANCIA,

    Plaintiff,

vs.

TWIN STONE DESIGNS &
INSTALLATIONS, INC., MIMATO, INC.,
IGNACIO MEDINA, MAYRA L. PARENTE,
and MIGUEL MATOS,

    Defendants.
_____/

## ORDER GRANTING MIGUEL MATOS AND MIMATO, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING TWIN STONE, MAYRA PARENTE, AND IGNACIO MEDINA'S MOTION FOR SUMMARY JUDGMENT

This Fair Labor Standards Act case presents two issues at summary judgment – joint employment and enterprise coverage. Defendants Twin Stone Designs & Installations, Inc., Mayra Parente, and Ignacio Medina's Motion for Summary Judgment urges the Court to find as a matter of law that Plaintiff Arnaldo Mancia was employed by a subcontractor on their construction project and not by them. Defendants Miguel Matos and Mimato, Inc. have moved for summary judgment arguing there is no enterprise coverage. The Court finds there is an issue of material fact as to whether Defendants Twin Stone Designs & Installations, Inc., Mayra Parente, and Ignacio Medina employed the Plaintiff and denies their motion as set forth in this Order. The Court agrees with Defendants Miguel Matos and Mimato, Inc. that there is no enterprise coverage as required by the Fair Labor Standards Act.

THIS CAUSE came before the Court upon Miguel Matos and Mimato, Inc.'s Motion for Summary Judgment **(D.E. 16)**, filed on **November 24, 2015** and Twin Stone Designs & Installations, Inc., Ignacio Medina, and Mayra Parente's Motion for Summary Judgment **(D.E. No. 17)** filed on **November 24, 2015**.

THE COURT has considered the motions, the responses, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Miguel Matos and Mimato, Inc.'s Motion for Summary Judgment is GRANTED. It is also

**ADJUDGED** the Twin Stone Designs & Installations, Inc., Ignacio Medina, and Mayra Parente's Motion for Summary Judgment is DENIED.

## I. Factual Background

Plaintiff Arnaldo Mancia was a manual laborer, assisting with tile and stone installation on two different job sites between July 2014 and May 2015. He worked for the Defendants on those two sites for a period of 46 weeks. Plaintiff is suing under the Fair Labor Standards Act for unpaid overtime compensation.

There are various Defendants in this case and the issues at summary judgment center on which entity employed Plaintiff. Defendants Mayra Parente and Ignacio Medina, a married couple, established Defendant Twin Stone Designs and Installations, Inc. in 1998. Twin Stone is in the business of selling and installing stone and tile to commercial contractors. More specifically, the company bids on the portion of commercial construction projects that involve stone and tile work. It also imports and sources other materials such as cement to each jobsite. Twin Stone has approximately 46-50 employees, who work at the office, warehouse, and at job sites. Those employees include office workers, warehouse workers, and drivers. Ms. Parente's

main focus at Twin Stone is business development and operations. She reviews and accepts or declines invitations to bid. She handles day-to-day development of any bid the company accepts. She presents the bids, reviews contracts, and closes the deals. She runs the accounting department, the project management department, and the estimating and drafting department. She works with Mr. Medina to ensure quality and production is in line with the company's commitments to their clients. Mr. Medina's main role is to ensure quality control. He visits the various job sites to ensure the product is being installed correctly, that the job is running on time, and that the project stays on budget.

To accomplish its work, Twin Stone states that it relies on subcontractors to install the tile and stone at its projects. Plaintiff disagrees with this statement and claims that installers worked directly for Twin Stone. Plaintiff, an installer, claims that he understood that he was working for Twin Stone and was hired by Twin Stone's supervisor, Mr. Mirko Lisse, who was a superintendent at a job site. Mancia Dep. at 42. While working on two of Twin Stone's projects, Plaintiff claims that Twin Stone provided all the equipment and tools he and other laborers used, including forklifts, shovels, grout, knives, carts, pallet jacks, and dollies, which had Twin Stone's name on them. That was the only corporate name on the equipment and when Plaintiff moved from one job site to another, some of the equipment was also transferred. *Id.* at 74, 75, 77; Medina Dep. at 32-33; Vasquez Decl. ¶ 21. Plaintiff also claimed he regularly wore Twin Stone company t-shirts to work. Matos Dep. at 22-23; Vasquez Decl. at ¶ 21. Twin Stone paid for Plaintiff's OSHA training course and provided him with protective eyewear at the job site. Mancia Dep. at 53-54.

One of Twin Stone's subcontractors is Viera Schluter Fundicion, LLC and it supplies non-skilled labor at various Twin Stone projects.[1] Dario Viera is the owner of Viera Schluter Fundicion, LLC, but it is Plaintiff's position that Mr. Viera represents himself to others as a Twin Stone supervisor. Plaintiff claims that Twin Stone pays Mr. Viera a weekly salary through an entity in Mr. Viera's name, Viera Schluter Fundicion, LLC. *Id.* at 43, 6, 7; Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Journal at 1-38) (showing weekly entries for payments to Dario Viera and Plaintiff).

The first project that Plaintiff worked on was the Faro Blanco project in the Florida Keys in the summer of 2014. It is Defendants' position that Plaintiff worked for the subcontractor Viera Schluter Fundicion, LLC on that project. Plaintiff testified that Dario Viera was his direct supervisor on that project and would assign him tasks daily. Mancia Dep. at 42-43. At that project, Twin Stone superintendent Mirko Lisse would go only once or twice per week. *Id.* at 47. It is Plaintiff's understanding that Twin Stone would deposit money into Viera Schluter Fundicion, LLC's bank account and that Mr. Viera would pay him in cash. *Id.* at 10. Defendants contend that Viera Schluter Fundicion, LLC would invoice Twin Stone, and Twin Stone would pay with a check made payable to Viera Schluter Fundicion, LLC. Def. Exh. 5 (Parente Decl. at ¶ 4); Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Log showing payments to Viera Schluter Fundicion, LLC). Plaintiff testified that Dario Viera and Mirko Lisse discussed Plaintiff's pay rate and advised Plaintiff he would be paid $100 per day. Mancia Dep. at 47. Twin Stone's accounting records in Transactional Journals reflect itemized payments within each of the 37 checks issued by Twin Stone to Viera Schluter Fundicion, LLC between July 2014 and March 2015 specifically designating the compensation for Dario Viera ($700-900/week) and

---

[1] Plaintiff has not named Viera Schluter Fundicion, LLC in this action. Plaintiff does not dispute that his pay while he reported to Dario Viera was in compliance with the Fair Labor Standards Act.

Arnaldo Mancia ($400-600/week) for each and every week. Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Journal at 1-38). During this time, Viera Schluter Fundicion LLC would pay Mr. Mancia in cash. On at least one occasion, Mirko Lisse sent an email from his Twin Stone Marble email account to Twin Stone's corporate office, where he detailed hours worked at the Faro Blanco jobsite that week by three employees, including the Plaintiff (who is referred to in documents as the osman). Pl. Exh. 3 (Twin Stone Time Records at 3). Mr. Lisse also used his personal email to report to Mayra Parente, the hours Plaintiff worked, as well as those worked by Dario Viera. *Id.* at 11.

After the Faro Blanco job, Plaintiff transferred to work at another Twin Stone project called the Saxony on Miami Beach. Mancia Dep. at 8, 11, 14. At the Saxony Project, Plaintiff continued to be paid by Dario Viera for six months, despite reporting to Miguel Matos as his new supervisor at the Saxony project. Mancia Dep. at 12-15; Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Journal). Mimato, Inc. has been in business for four years and Miguel Matos is the company's principal. Matos Dep. at 11. Mimato, Inc. is a cleaning, sound control and waterproofing company. *Id.* at 11. It is Defendants' position that Twin Stone is a client of Mimato, Inc. Mr. Matos testified Twin Stone is the company's only client. Matos Dep. 11. Defendants' position is that Mimato, Inc. employed Plaintiff. Matos Dep. at 11, 36. Plaintiff, however, contends that Twin Stone's internal accounting records reflect that Twin Stone paid Miguel Matos $800 per week by issuing checks to him via Mimato, Inc. Matos Dep. at 20; Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Journal at 39-47); Parente Dep. at 29, 31. Mr. Matos would submit formal time sheets to Twin Stone, documenting his own hours worked, as well as Plaintiff's hours. Mancia Dep. at 31, 38; Pl. Exh. 3 (Twin Stone Time Records). These were the very hours that formed the basis upon which Twin Stone issued payments for Plaintiff

5

and other employees through the supervisor's corporate entities. *See, e.g.*, Pl. Exh 3 at 41 (Twin Stone Time Records); Pl. Exh. 1, Def. Exh. 6 (Twin Stone Transaction Journal at 40) (Check Date 4/3/15 to Mimato, Inc., which included $581.25 for work done by Plaintiff and the time records showed Plaintiff worked five days at $100 and he worked a sixth day for 6.5 hours at $12.50/hour, totaling $581.25).

At the Saxony project, Mr. Matos was Plaintiff's supervisor and Mr. Matos would assign the jobs to Plaintiff Mancia. Matos Dep. at 36. Mr. Matos kept track of employee's work hours. *Id.* at 37. Mr. Matos testified that he informed Plaintiff of his pay rate and how he was going to be compensated, from Monday to Friday, eight hours a day. *Id.* at 36-37. Mr. Matos testified that he reported weekly to Twin Stone, the number of employees working for Mimato, Inc., and the number of days they worked. *Id.* at 41, 43. Mimato, Inc. would take 10% of the employee's pay as withheld taxes, but did not provide employees with a 1099 form. Matos Dep. at 49.

Juan Ortiz served as the superintendent of the Saxony project and he oversaw Miguel Matos. Mancia Dep. at 16-17. In that capacity, he had general oversight of the workers. Juan Ortiz is the president of Twin Ortiz Marble Installations, Inc., a company that subcontracted with Twin Stone to act as the superintendent of the Saxony project. Medina Dep. at 42; Mancia Dep. at 18. Plaintiff claims that Mr. Ortiz would sometimes give him directives at the Saxony project. Mancia Dep. at 16-17.

It is Plaintiff's position that Twin Stone is his employer and merely processed payments each week through other corporate entities, such as Viera Schluter Fundicion and Mimato, Inc., to skirt responsibility under the Fair Labor Standards Act.

## II. Legal Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III. Legal Analysis

*A. Was Plaintiff an employee of Defendant Twin Stone Designs and Installation, LLC?*

The Fair Labor Standards Act's overtime protections apply to employees, not independent contractors. *Perdomo v. Ask 4 Realty & Mgmt., Inc*, 298 F. App'x. 820, 821 (11th Cir. 2008). The Act defines employee as any "individual employed by an employer." 29 U.S.C. § 203(e)(1). Additionally, FLSA defines "to employ" as "to suffer or permit to work." 29 U.S.C. § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). Whether an employer "suffer[s] or permit[s] an individual to work, [the Court] ask[s] 'if, as a matter of economic reality, the individual is dependent on the entity.'" *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012) (quoting *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996)). The existence of a joint employment relationship turns on the economic reality and the factors established in

*Aimable v. Long and Scott Farms*, 20 F.3d 434, 439-440 (11th Cir. 1994) are used to determine whether Mimato, Inc. and Twin Stone were Plaintiff's joint employers.

Courts use the *Aimable* factors to determine whether an individual employee is economically dependent on another entity. The factors are as follows:

(1) the nature and degree of control of the alleged joint employer over the employee;
(2) the degree of supervision over work, either direct or indirect;
(3) the right to hire, fire, or modify the employment conditions;
(4) the power to determine the workers' pay or method of payment;
(5) the preparation of payroll and payment of wages;
(6) the ownership of facilities where the work occurred;[2]
(7) the performance of a job integral to the business, and;
(8) the relative investment in the equipment and facilities.

*Aimable*, 20 F.3d at 440-45. "No one factor is controlling, nor is the list exhaustive." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 n. 2 (11th Cir. 2013) (setting forth six factors, similar to the *Aimable* factors, to be applied in cases where there is an inquiry into the existence of the employment relationship).[3]

"[A] joint employment relationship is not determined by a mathematical formula." *Antenor*, 88 F.3d at 933. While courts consider each factor separately, the factors must ultimately be weighed "collectively and qualitatively." *Id.* "While these factors serve as a guide, the overarching focus of the inquiry is economic dependence." *Dang v. Inspection Depot, Inc.*, Case No. 14-61857, 2015 WL 6104333, *2 (S.D. Fla. Oct. 16, 2015) (holding it was an issue of fact as

---

[2] This factor, ownership of facilities, is not relevant in this case. As is typical of the construction business, Twin Stone does not own the facilities where Plaintiff was working.

[3] The factors listed in *Scantland*:
(1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
(3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4) Whether the service rendered requires a special skill;
(5) The degree of permanency and duration of the working relationship;
(6) The extent to which the service rendered is an integral part of the alleged employer's business.

to whether workers were employees). In analyzing the *Aimable* factors, the Court finds there is an issue of fact as to whether Twin Stone was a joint employer of Plaintiff, together with Mimato, Inc.

### 1. Degree of control and Nature of Supervision (Factors 1 & 2)

First, the Court examines the degree of control and supervision over Plaintiff's work. "Control is only significant when it shows [a company] exerts such a control over a meaningful part of the business that it stands as a separate economic entity." *Scantland,* 721 F.3d at 1313 (quoting *Usery v. Pilgrim Equip, Co.*, 527 F.2d 1308, 1312-13 (5th Cir. 1976)). The record shows that while working on Twin Stone projects, Mr. Viera and Mr. Matos oversaw Plaintiff's work and gave him direct orders. They kept track of his time. There is also evidence that Juan Ortiz, who ran Twin Ortiz, was a superintendent at the Saxony Project, and he also gave Plaintiff work directives. Finally, Twin Stone principal, Ignacio Medina, testified that he would tell workers what time to show up at job sites and that he visited and monitored job sites daily. Medina Dep. at 11, 46. The record also shows that Twin Stone received time records for Plaintiff's work. Plaintiff also wore a company t-shirt to work that said Twin Stone, whom Plaintiff believed to be his employer. While there is evidence that Mimato, Inc. did exert control and supervision as to Plaintiff, there are also indicia from which a reasonable jury could find Twin Stone exerted control and provided supervision over Plaintiff. Based on the record evidence, the Court does not find this factor weighs in favor of summary judgment.

### 2. Hiring and Firing (Factor 3)

In analyzing the next factor -- hiring and firing—it weighs in favor of finding Twin Stone was a joint employer. Twin Stone employee Mirko Lisse hired Plaintiff to work on the Faro Blanco project in the Florida Keys. Later, Plaintiff was transferred from one Twin Stone project in the Florida Keys, where he reported to Dario Viera, to another Twin Stone project, where he

9

reported to a different supervisor Miguel Matos. The only constant was Twin Stone. This weighs in favor of finding that Plaintiff was economically dependent on Twin Stone. There is no evidence that either Viera Schluter Fundicion or Mimato, Inc. were responsible for that change in the conditions of Plaintiff's employment.

### 3. Compensation and Payroll (Factors 4 &5)

The next factor deals with Plaintiff's pay. Twin Stone's position is that it has never prepared payroll for any of its subcontractors. Twin Stone's internal accounting records show that they tracked Plaintiff's hours and compensation. Payments went out from Twin Stone to either Viera Schluter Fundicion, LLC or to Mimato, Inc. The record also shows that Twin Stone employee Ana Vega received emails at her Twin Stone account from Mirko Lisse showing the hours and dates worked by all workers, including Plaintiff, and payment would be calculated from there. It is Plaintiff's position that Twin Stone would simply issue those payments through Miguel Matos's corporation. That corporation, Mimato, Inc., did not have its own independent office (neither did Viera Schluter Fundicion, LLC) and there is no record evidence that it actually bid on Twin Stone projects or had a written contract for work with Twin Stone. Medina Dep. at 28. This record evidence buttresses Plaintiff's position that these corporations were merely a conduit for funneling payment to laborers. Reviewing the record, the Court finds there is an issue of fact as to Twin Stone's involvement in deciding Plaintiff's pay and an issue of fact as to whether Viera Schluter Fundicion, LLC and Mimato, Inc. were truly subcontractors. Accordingly, the Court finds an analysis of this factor weighs against a finding that summary judgment is appropriate.

### 4. Performance Integral to Business (Factor 7)

The next factor is whether Plaintiff's work was integral to Twin Stone's business. Plaintiff's job was to bring material from the bottom floors to the upper levels, and to perform

several cleaning functions. Twin Stone's business was to install tile and stone at construction projects. The Eleventh Circuit examined this factor in *Layton,* 686 F.3d at 1179 and found that while drivers performed an essential function for DHL by delivering packages, the factor did not weigh in favor of joint employment. Similarly, here, this Court finds this factor weighs in favor of Defendants as it cannot be said that Twin Stone's overall work depended integrally on Plaintiff's function. In addition, in the construction business, it is not unusual for there to be subcontractors to perform the many tasks that need completion and for a prime contractor to work on oversight. Accordingly, this factor weighs against a finding of joint employment.

### 5. Relative Investment in Equipment and Facilities

Finally, courts consider a purported joint employer's relative investment in equipment and facilities because "workers are more likely to be economically dependent on the person who supplies the equipment or facilities." *Layton,* 686 F.3d at 1181. Defendants' position is that the subcontractors use their own equipment, but the record evidence belies this contention. Medina Dep. at 32-33 (stating the drivers deliver tools from Twin Stone's warehouse to the job site). Mr. Medina also testified that all construction material (i.e. stone, tile etc.) used on job sites were purchased by and delivered to the sites by Twin Stone. *Id.* at 29-30. Twin Stone employed three drivers to transport equipment and materials to job sites. *Id.* at 16-17. Plaintiff also testified at deposition that forklifts, pallet jacks, and dollies were on job sites and these tools were labeled with the name "Twin Stone." Mancia Dep. at 74-75. Plaintiff's safety goggles and OSHA training were also provided by Twin Stone. *Id.* at 52. There is a dearth of evidence that the purported subcontractors provided equipment. Accordingly, the Court finds this factor favors a finding that Twin Stone was a joint employer.

Viewed collectively and qualitatively, the *Aimable* factors do not conclusively establish that Defendants are entitled to summary judgment. Put another way, the Court does not find that

11

as a matter of law the Plaintiff was economically dependent on Mimato, Inc. and not Twin Stone. There are facts in dispute that could lead a reasonable factfinder to conclude that Twin Stone was either Plaintiff's employer or a joint employer, together with Mimato, Inc. Accordingly, the Court finds the motion for summary judgment should be denied. *See Garcia v. Copenhaver, Bell & Assoc., MD.'s, P.A.,* 104 F.3d 1256, 1266 (11th Cir. 1997) (holding that whether there is an employee/employer relationship is normally reserved to the jury.).

As to the individual Defendants (Medina and Parente), Defendants' Motion only seeks summary judgment as to their potential individual liability on the basis that the individuals' liability is "derivative" of Twin Stone's. If the corporation is not an "employer," then the individual Defendants are not either. Because the Court finds that there is an issue of fact as to whether Twin Stone was Plaintiff's employer, the Court also denies the individual Defendants' motion for summary judgment.

*B. Are Mimato, Inc. and Miguel Matos covered under the Act?*

The Fair Labor Standards Act requires payment of overtime wages to employees who are personally engaged in commerce or who work for an enterprise engaged in commerce. 29 U.S.C. § 207(a)(l). An enterprise engaged in commerce is one whose gross annual sales or business done is not less than $500,000 per year. 29 U.S.C. § 203(s)(1)(ii). If the $500,000 per year threshold is not met, the employer is not an enterprise engaged in commerce and the employee is not entitled to overtime pay. When a company has not grossed more than $500,000 per year and a plaintiff is unable to proffer evidence that income will exceed the threshold, summary judgment is proper. *Johnson v. Express Serv. Messenger & Trucking, Inc.,* No. 07-20007, 2008 WL 2944899, *4 (S.D. Fla. July 25, 2008).

In responding to the Defendant Miguel Matos and Mimato, Inc.'s motion for summary judgment, the Plaintiff did not argue the merits of the enterprise coverage issue. Plaintiff did, however, file a statement of facts in opposition to the motion. In that statement, Plaintiff does not dispute the dollar amounts contained in Mimato, Inc.'s tax return and bank statements. Def. Mimato, Inc.'s Exh. 1, 2. Therefore, there is no evidence to show that Defendant Mimato, Inc. grossed more than the requisite $500,000 to establish enterprise coverage and the Court grants summary judgment to Mimato, Inc.

The liability of the individual Defendant Miguel Matos is derivative to the corporation. Because summary judgment is entered in favor of the corporation, it must also be entered on behalf of the individual Defendant Miguel Matos. *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328, 1336 (S.D. Fla. 2009).

DONE AND ORDERED in Chambers at Miami, Florida, this ___/___ of March 2016.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record